UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JACK GUTTMAN, Individually and as a Member
of AMERICAN SELF-STORAGE STATEN
ISLAND, LLC,                                                             DOCKET NO.:

                            Plaintiffs,                      COMPLAINT

       -against-

WARREN DIAMOND, JOHN DEL MONACO,
and AMERICAN SELF-STORAGE MGMT.
ASSOC., INC.,

                           Defendants.
------------------------------------------------------------X

    Plaintiff, Jack Guttman ("Guttman"), individually and as a member of American Self-Storage Staten Island, LLC (the "Company"), as and for his complaint against the defendants, Warren Diamond ("Diamond"), John Del Monaco ("Del Monaco") and American Self-Storage Mgmt. Assoc., Inc. ("ASSMA") (collectively, Diamond, Del Monaco and ASSMA shall be known as the "Defendants"), alleges the following:

## INTRODUCTION

    1.    Diamond and Del Monaco, both through their positions (i) as managers of the Company and (ii) the principals of ASSMA, a management company they retained in their capacities as managers to conduct the day-to-day business affairs of the Company, have engaged in a relentless pattern of fraud and self-dealing, including, but not limited to, inappropriately reimbursing themselves and affiliates for management and other expenses, making numerous affiliate and shareholder loans for which there was no authorization or supporting documentation, and paying for the expenses of other entities that have no relationship to the

Company. Due to their inappropriate conduct, Diamond and Del Monaco have breached their fiduciary duties to the Company and their fellow members, including the plaintiff.

2. Accordingly, this derivative action seeks damages against the Defendants for their numerous acts of mismanagement, malfeasance and fraud.

## JURISDICTION

3. This action is one in which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1332.

4. There is complete diversity between the parties. Guttman is a resident of the City, County and State of New York.

5. The Company is an active domestic limited liability company that was formed on October 3, 2002, when Articles of Organization were filed with the Secretary of State of the State of New York.

6. Upon information and belief, Diamond is a resident of the County of Monmouth and State of New Jersey.

7. Upon information and belief, Del Monaco is a resident of the County of Monmouth and State of New Jersey.

8. Upon information and belief, ASSMA is a Florida corporation with a principal office located in Boca Raton, Florida.

9. The amount in controversy exceeds the sum of $75,000.00.

## VENUE

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a), as Guttman resides within the geographic boundaries of the Southern District of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

11.  The Company currently has nine (13) members, including Guttman, Diamond and Del Monaco. The remaining members of the Company are David Brown, James Monaco, Patrick Gagliardi, Mickael Schwartz, Joseph Pinto, Grace Delmonaco, the Murry Mruvka Family Trust, Scott Diamond, Grace Geritano, and Melissa Witt (collectively, all of the Company's members, including Guttman, Diamond and Delmonaco, shall be referred to as the "Members").

12.  Guttman owns ten (10%) percent of the Company's issued and outstanding membership interests.

13.  Upon information and belief, Diamond owns seventeen and a half (17.50%) percent of the Company's issued and outstanding membership interests.

14.  Upon information and belief, Del Monaco owns seventeen and a half (17.5% percent of the Company's issued and outstanding membership interests.

15.  Upon information and belief, Diamond and Del Monaco are the principals of ASSMA.

**A. Relevant Terms of the Company's Operating Agreement**

16.  The Members executed an operating agreement for the Company effective as of January, 2003 (the "Agreement"). A copy of the Agreement is annexed hereto as **Exhibit "A"** and incorporated herein by reference.

17.  Article 3 of the Agreement entitled "Purpose" states, in relevant part, that the Company was formed:

> "(A) to own and operate as a self-storage facility the building and land located at 330 Tompkins Avenue, Staten Island, New York (the "Property"), (B) to incur indebtedness that shall only include a mortgage with CIBC, Inc. in accordance with an application letter dated September

19, 2002 in the sum of Six Million Seven Hundred Thousand ($6,700,000.00) Dollars (the "Loan") and shall have no indebtedness or incur, assume or guaranty any liability other than (i) debts and liabilities for trade payables and accrued expenses incurred in the ordinary course of business of operating the Property and (ii) the Loan; and (C) to conduct such other activities and operations as are consistent with and reasonably related to the ownership of the Property."

18.   Article 3 also provides that "[n]otwithstanding anything contained herein to the contrary, the Company shall not engage in any business, and it shall have no purpose, unrelated to the Property…."

19.   Paragraph "A" of Article 7 of the Agreement entitled "Management" stipulates that "[t]he managers of the Company shall be Warren Diamond and John Delmonaco." Further, "[t]he unanimous consent of the Managers shall be required for any action by the Company."

20.   Diamond and Delmonaco's sole management control over the Company is further codified in Paragraph "A" of Article 10 of the Agreement that provides: "The Members, who are not Managers, shall not (i) take part in the management of the business or transact any business for the Company, (ii) have the power to sign for or to bind the Company; (iii) be paid any salary or have a drawing account; or (iv) bring an action for partition against the Company."

21.   Finally, Article 19 of the Agreement entitled "Construction" requires that "This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York."

AL/D153195/FL2183

**B. Defendants' Management of the Company**

22. Since June 3, 2003, in accordance with the Agreement, Diamond and Del Monaco have been the managers of the Company and the only persons responsible for the general day-to-day operation of the Company, including, but not limited to: (i) the supervision of the Property; (ii) establishing the terms and conditions of occupancy by the tenants and licensees of the Property, as well as the drafting and entering into of rental and license agreements; (iii) the collection of rent and fees from the tenants; (iv) the maintenance, repair and landscaping of the Property; (v) the staffing of all employees required for the operation of the Company's business; (vi) the negotiation and execution of all agreements deemed necessary for the for the operation of the Company's business (i.e., utilities, services, concessions, vendors, etc.); (vii) compliance with all statutes, ordinances, laws, rules, regulations or order of any government or regulatory body having jurisdiction over the Property; (viii) the establishment and implementation of a system of record keeping and bookkeeping with respect to all receipts and disbursements in connection with the management and operation of the Property; (ix) the payment of all real estate taxes, personal property taxes, and all other taxes assessed or to be levied upon the Property; and (x) the collection and billing of all accounts receivable due to the Company with respect to the Property.

23. To assist in their management responsibilities for the business affairs and activities of the Company, Diamond and Del Monaco retained the services of ASSMA, which entity they own.

24. In a Property Management Agreement dated February 28, 2003 (the "PMA"), the Company retained the services of ASSMA. A copy of the PMA is annexed hereto as **Exhibit "B"** and incorporated herein by reference. Del Monaco executed the PMA on behalf of the

Company as its Managing Member, while Diamond signed the PMA as the President of ASSMA.

## C. Diamond and Delmonaco's Mismanagement of the Company's Business Affairs, Fraud and Self-Dealing

### (i) The Examination of the Company's Books and Records by Eisner Amper LLP

25. After a request made by or on behalf of Guttman to Diamond in late 2011, Guttman was granted permission to examine some of the books and records of the Company maintained by Diamond and Del Monaco through ASSMA. This examination was conducted by the certified public accounting firm of Eisner Amper LLP ("Eisner") over the course of a few days in December 2011. This examination was not limited to the Company, but included three other investment entities that the parties were partners in (367 Southern Partners, LLC, Gerard Avenue LLC and McCarter Highway Associates, LLC) and which companies Diamond and Del Monaco also managed.

26. After Eisner's investigation of ASSMA's business books and records, specifically the QuickBooks files for the respective entities, Eisner made several written findings that were transmitted to Diamond (the "Findings"). A copy of Eisner's Findings dated January 30, 2012, including the detail reports concerning the Company that were prepared by Eisner and given to Diamond, are annexed hereto as **Exhibit "C"** and incorporated herein by reference.

27. First, Eisner determined that there were numerous expenses booked to the following entities/parties: Scott Diamond, Warren Diamond, ASSMA Inc. – DPP, ASSMA Management Fee, ASSMA Payroll, ASSMA LLC, ASSMA Inc. and ASSMA DPP Coinsurance, and these expense items were booked to such expense accounts as "management fees," "payroll-leased labor," "advertising," "office," "supplies," and "rent expense-office," among other accounts. As

set forth in the detail report for the Company, the total expenses booked to the Company for these entities/parties totaled $4,673,972.00. The reimbursement of expenses incurred by both the executive officers of the management entities and the management entities themselves are unauthorized and are precluded by paragraph 2(d) of the PMA.

28.   Eisner also noted that the books and records contained numerous affiliate and shareholder loans for which there are no supporting documentation including, but not limited to, loan authorization support, loan agreements, information pertaining to loan terms, loan amortization schedules and the minutes of the Company meetings in which the loans were discussed and approved by the Members.

29.   Finally, Eisner identified various limited liability companies that had their expenses paid for through the Company and other jointly owned investment entities; however, their identities and relationships to the Company and other jointly owned investment entities were not previously disclosed by Diamond and Del Monaco. These limited liability companies were identified as 3141 9th Street Partners, LLC, 45 Clinton Avenue, LLC, Quakerbridge Ventures, LLC and BNC Storage, LLC, and the expenses booked to these entities were classified to expense accounts such as "supplies," "insurance-medical," payroll-leased labor" and "management fee," amongst other accounts.

    (**ii) The Defendants' Refusal to Provide Further Access to the Company's Books and Records**

30.   In its Findings, Eisner also requested that the Defendants provide it with the following documents: (i) complete copies of the invoices that were reimbursed to either the executives of the management entities or the management entities themselves for "overhead expenses"; (ii) the supporting documentation for the shareholder loan accounts, including, but not limited to, loan authorization support, loan agreements, information pertaining to loan terms, loan amortization

AL/D153195/FL2183

schedules and the minutes of the Company meetings in which the loans were discussed and approved by the members; and (iii) complete copies of the invoices that were used to pay the expenses of previously unidentified limited liability companies that had no relationship to the Company.

31. Due to the Defendants refusal to provide the additional documentation requested by Eisner in its Findings, Guttman filed a special proceeding against the Defendants in New York State Supreme Court located in the County of New York under index number 652212/12 that sought an order directing the Defendants to provide Guttman further access to the financial books and records of the Company and other limited liability companies in accordance with his rights under the Agreement (the "Special Proceeding").

32. Pursuant to a Stipulation and Settlement Agreement dated July 23, 2012, that was "So Ordered," the Special Proceeding was resolved and Guttman's accountant was to be given "access to the financial books and records, together with the supporting documentation, Quickbook or other computer accounting programs, check registers, invoices, credit card statements, or other financial records requested by [Guttman]" belonging to the Company, amongst other entities (the "Order"). A copy of the Order is annexed hereto as **Exhibit "D."**

33. Pursuant to the Order, Paritz and Company, P.A., a certified public accounting firm, was granted partial access to the financial books and records of the Company and either confirmed the Findings or found further accounting discrepancies and irregularities, including, but not limited to:

   (a) Cash disbursements that have no business purpose or were not permitted under the management agreement, including various charitable contributions, as well as rent and labor costs paid to ASSMA.

(b)   Certain expenditures, including, but not limited to, bad debt expenses and professional fees, for which there is no adequate explanation as to their business purpose.

(c)   The issuance of no interest loans to unrelated entities, including, but not limited to, ASSMA and other entities controlled by Diamond. Further, there is no documentation why these loans were made or why no interest was charged.

34.   Moreover, despite the provisions of the Order and Guttman's due demand, ASSMA has continually failed and refused to permit Guttman full access to the books and records of the Company.  Specifically, ASSMA has refused to provide Guttman's accountants with the following documents and information:

(i) 1099's for all leased labor paid for by the Company for the last six years;

(ii) copies of all legal and professional bills paid for by the Company;

(iii) documentation supporting all inter-company loans;

(iv)  documentation and computation of bad debt expenses; and

(v)   documentation supporting expenditures made to the Diamond Protection Plan

**D. Demand Futility**

35.   Guttman has not made any demand upon the Company's managing members to institute this action.

36.   Such a demand would be a futile act because (a) the Agreement vests total management control of the Company in the hands of Diamond and Del Monaco, and (b) Diamond and Del Monaco benefitted personally from the transactions that are challenged in this lawsuit, thereby making them incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

AL/D153195/FL2183

37. Guttman will adequately and fairly represent the interests of the Company and its members in enforcing and prosecuting the Company's rights in this action.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty against Diamond and Del Monaco as Managers of the Company)

38. Guttman repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

39. Diamond and Del Monaco, as the managing members of the Company, owed a fiduciary duty to the Company, including the duties of good faith, fair dealing, loyalty, trust and confidence.

40. As fiduciaries, at all relevant times, Diamond and Del Monaco were required to act in the best interests of the Company and to avoid taking actions that elevated their own interests over that of the Company.

41. Diamond and Del Monaco breached their fiduciary duties to the Company by squandering, grossly mismanaging and wasting the Company's finances and property for their personal gain.

42. Such acts of waste and mismanagement include, but are not limited to:

(a) Misusing their positions as managers to reimburse themselves and their affiliated companies, including ASSMA, for unauthorized personal and overhead expenses, which reimbursements constitute a blatant and substantial misuse and misappropriation of Company funds;

(b) Misusing their positions as managers to make payments to non-related limited liability companies, which payments constitute a blatant and substantial misuse and misappropriation of Company funds; and

(c) Misusing their positions as managers to make numerous affiliate and shareholder loans for which there is no supporting documentation including, but not limited to, loan authorization support, loan agreements, information pertaining to loan terms, loan amortization schedules and the minutes of the Company meetings in which the loans were discussed and approved by the Members.

43. Diamond and Del Monaco's actions were taken in their own self-interest and not in the interest of the Company that has resulted in damages being sustained by the Company.

44. Diamond and Del Monaco, therefore, breached their fiduciary duties owed to the Company.

45. By reason of the foregoing, the Company is entitled to an accounting by Diamond and Del Monaco of their conduct as managing members of the Company and, upon completion of such accounting, to the recovery of all damages that the Company has suffered as a result of their misconduct and mismanagement in an amount to be determined at trial, which is believed to be not less than $2,000,000.00.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty against Diamond and**
**Del Monaco as Members of the Company)**

46. Guttman repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

47. Diamond and Del Monaco, as members of the Company, owed a fiduciary duty to the Company, including the duties of good faith, fair dealing, loyalty, trust and confidence.

48. As fiduciaries, at all relevant times, Diamond and Del Monaco were required to act in the best interests of the Company and to avoid taking actions that elevated their own interests over that of the Company.

49. Diamond and Del Monaco breached their fiduciary duties to the Company by squandering, grossly mismanaging and wasting the Company's finances and property for their personal gain.

50. Such acts of waste and mismanagement include, but are not limited to:

(a) Misusing their positions as managers to reimburse themselves and their affiliated companies, including ASSMA, for unauthorized personal and overhead expenses, which reimbursements constitute a blatant and substantial misuse and misappropriation of Company funds;

(b) Misusing their positions as managers to make payments to non-related limited liability companies, which payments constitute a blatant and substantial misuse and misappropriation of Company funds; and

(c) Misusing their positions as managers to make numerous affiliate and shareholder loans for which there is no supporting documentation including, but not limited to, loan authorization support, loan agreements, information pertaining to loan terms, loan amortization schedules and the minutes of the Company meetings in which the loans were discussed and approved by the Members.

51. Diamond and Del Monaco's actions were taken in their own self-interest and not in the interest of the Company that has resulted in damages being sustained by the Company.

52. Diamond and Del Monaco, therefore, breached their fiduciary duties owed to the Company.

53. By reason of the foregoing, the Company is entitled to an accounting by Diamond and Del Monaco of their conduct as members of the Company and, upon completion of such accounting, to the recovery of all damages that the Company has suffered as a result of their

AL/D153195/FL2183

misconduct and mismanagement in an amount to be determined at trial, which is believed to be not less than $2,000,000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Conversion against Diamond and Del Monaco)

54. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

55. Diamond and Del Monaco misused their positions as managers and members of the Company by squandering, grossly mismanaging and wasting the Company's finances and property for their personal gain.

56. Such acts of waste and mismanagement include, but are not limited to:

    (a) Misusing their positions as managers to reimburse themselves and their affiliated companies, including ASSMA, for unauthorized personal and overhead expenses, which reimbursements constitute a blatant and substantial misuse and misappropriation of Company funds;

    (b) Misusing their positions as managers to make payments to non-related limited liability companies, which payments constitute a blatant and substantial misuse and misappropriation of Company funds; and

    (c) Misusing their positions as managers to make numerous affiliate and shareholder loans for which there is no supporting documentation including, but not limited to, loan authorization support, loan agreements, information pertaining to loan terms, loan amortization schedules and the minutes of the Company meetings in which the loans were discussed and approved by the Members.

57. The funds and finances misappropriated, misused and wasted by Diamond and Del Monaco was owned by and belonged to the Company.

58.   Guttman, on behalf of the Company, has demanded that the funds and finances misappropriated, misused and wasted by Diamond and Del Monaco be returned to the Company.

59.   By reason of the foregoing, the Company is entitled to the recovery of all damages that the Company has suffered as a result of Diamond and Del Monaco's misappropriation, misuse and waste of its funds and finances in an amount to be determined at trial, which is believed to be not less than $2,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Aiding and Abetting a Breach of Fiduciary Duty against ASSMA)

60.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

61.   By virtue of the foregoing allegations, ASSMA knowingly rendered substantial assistance to Diamond and Del Monaco to assist in their breach of fiduciary duties to the Company.

62.   By reason of the foregoing, the Company is entitled to the recovery of damages that it has suffered as a result of the misconduct of ASSMA in an amount to be determined at trial, which is believed to be not less than $2,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract against ASSMA)

63.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

64.   On February 28, 2003, the Company and ASSMA entered into the PMA.

65.   The Company substantially performed all of its obligations under the PMA.

66.   ASSMA breached the PMA by reimbursing itself for its overhead expenses from the Company's revenue, as well as using the Company's revenue to reimburse its executives,

Diamond and Del Monaco, for the time they devoted to managing the affairs of the Company. These reimbursements were expressly forbidden by the PMA.

67. Due to ASSMA's breaches of the PMA, the Company has suffered damages.

68. By reason of the foregoing, the Company is entitled to the recovery of damages that it has suffered as a result of ASSMA's breach of the PMA in an amount to be determined at trial, which is believed to be not less than $2,000,000.00.

WHEREFORE, Guttman, individually and as a member of the Company, demands judgment against the Defendants as follows:

1) On the First Cause of Action, an accounting by Diamond and Del Monaco of their conduct as managing ambers of the Company and, upon completion of such accounting, to the recovery of all damages that the Company has suffered as a result of their misconduct and mismanagement in an amount to be determined at trial, which is believed to be not less than $2,000,000.00;

2) On the Second Cause of Action, an accounting by Diamond and Del Monaco of their conduct as members of the Company and, upon completion of such accounting, to the recovery of all damages that the Company has suffered as a result of their misconduct and mismanagement in an amount to be determined ta trial, which is believed to be not less than $2,000,000.00;

3) On the Third Cause of Action, the recovery of all damages that the Company has suffered as a result of Diamond and Del Monaco's misappropriation, misuse and waste of its funds and finances in an amount to be determined at trial, which is believed to not less than $2,000,000.00;

4) On the Fourth Cause of Action, the recovery of all damages that that Company has suffered as a result of ASSMA's aiding and abetting Diamond and Del Monaco's breach of their fiduciary duties in an amount to be determined at trial, which is believed to be not less than $2,000,000.00;

5) On the Fifth Cause of Action, the recovery of all damages that the Company has suffered as a result of ASSMA's breach of the PMA in an amount to be determined at trial, which is believed to be no less than $2,000,000.00;

6) The costs and disbursements of this action; and

7) Such other and further relief as may be deemed just, proper and equitable under the circumstances prevailing.

Dated:   January 18, 2013
         Lake Success, New York

                              FRIEDMAN HARFENIST KRAUT
                              & PERLSTEIN LLP
                              Attorneys for plaintiff

By:   ___/s/Steven J. Harfenist_____
      Steven J. Harfenist (SH 6930)
      3000 Marcus Avenue, Suite2E1
      Lake Success NY 11042
      (516) 355-9600